UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| REYNALDO FLORES R.[1] § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> KILOLO KIJAKAZI, § <br> Acting Commissioner of Social Security,[2] § <br> Defendant. § | Civil Action No. 6:20-CV-00085-H-BU |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Reynaldo Flores R. seeks judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. Under Special Order No. 3-251 of this Court, this case was automatically referred for the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendation of dispositive matters. *See* Dkt. No. 4. The parties have not consented to proceed before a magistrate judge.

For the reasons explained below, the undersigned recommends that the Court affirm the Commissioner's decision.

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. BACKGROUND

Plaintiff alleges that his disability began on February 8, 2017. *See* Administrative Record, Dkt. No. 20 ("Tr.") at 11. Plaintiff applied for Title II and XVI Supplemental Security Income on October 13, 2017. *Id.* After his application was initially denied on January 29, 2018, he filed for reconsideration which was denied on October 10, 2018. Tr. 72, 92. Plaintiff challenged the denial and requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 105. That hearing was held on September 23, 2019, in Fort Worth, Texas, with Plaintiff and counsel appearing via teleconference from San Angelo, Texas. Tr. 35-62.

Plaintiff was born on June 30, 1977, and was 42-years-old on the date of his hearing. Tr. 167. He graduated from high school. Tr. 44. He had past work experience as a laborer in meat products. Tr. 59.

The ALJ found Plaintiff was not disabled and not entitled to disability benefits. *See* Tr. 10-33 ("ALJ Decision"). At step one of the analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 8, 2017, the alleged disability onset date. [3] Tr. 12. At step two, the ALJ found Plaintiff had several severe impairments including: avascular necrosis, obesity, bipolar disorder, narcissistic personality disorder, post-traumatic stress disorder, substance-induced psychotic disorder, and polysubstance abuse involving cocaine, marijuana, and alcohol. Tr. 14. At step three, the ALJ found Plaintiff had an impairment or combination of impairments that met or equaled the severity

---

[3] As discussed further below, the Commissioner employs a five-step analysis in determining whether claimants are disabled under the Social Security Act.

of one of the impairments listed in the Social Security regulations and also found the claimant had substance use disorder. Tr. 14-20. The ALJ also determined, if Plaintiff ceased substance use, he had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [C]laimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk two hours of an eight-hour workday, and sit six hours of an eight-hour workday. The claimant could not push or pull, or use foot controls with his right lower extremity. The claimant could never climb ladders, ropes, and scaffolds, but he could occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl. The Claimant could not be required to drive a motor vehicle. The claimant would be limited to performing simple, routine tasks, to having occasional interaction with coworkers and supervisors, and to having no interaction with the public. The claimant would be limited to jobs with no more than occasional changes in work setting.

Tr. 20.

The ALJ based the RFC on the medical records, reports from his treating physicians, the non-examining Social Security Administration's ("SSA") physicians, and Plaintiff's testimony. Tr. 20-26. At step four, the ALJ found Plaintiff could not return to his past relevant work as a laborer in meat products. Tr. 27. The ALJ then considered Plaintiff's age, education, his RFC, and the testimony of a vocational expert ("VE") to determine that there were jobs in the national economy that exist in significant numbers that the plaintiff can perform. Tr. 27-28. The ALJ also determined Plaintiff's substance-use disorder was a contributing factor material to the determination of disability because "the claimant would not be disabled if he stopped the substance use." Tr. 28. Accordingly, the ALJ determined Plaintiff had not been under a disability as defined by the Social Security Act for the period in question. *Id.*

3

Plaintiff appealed the ALJ's decision to the Appeals Council, the Council affirmed, and Plaintiff timely filed this action in federal district court.

## II. LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. See 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that he is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995);

4

*Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his or her initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802

(5th Cir. 1989) (per curiam)); *see also Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) Instead, a court will only reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record and only if that failure prejudiced Plaintiff. *Id*. That is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728–29 (5th Cir. 1996).

III. ANALYSIS

Plaintiff challenges the ALJ's decision on three grounds. Dkt. No. 19 at 2-3. First, Plaintiff asserts the ALJ improperly determined substance use was a material factor contributing to his disability. *Id.* at 2. Second, Plaintiff claims the ALJ substituted her opinions for those of the medical sources. *Id.* at 3. Finally, Plaintiff argues there are not jobs existing in the economy in significant numbers because the jobs identified by the vocational expert are inconsistent with the RFC. *Id.* The Court takes each issue in turn.

A. <u>Materiality of Substance Use</u>

Plaintiff argues the ALJ improperly found that Plaintiff would not be disabled if he stopped using illegal substances. *Id.* at 14. Plaintiff claims that "there is no support in the record for the ALJ's conclusion that substance use disorder is a material factor contributing to disability." *Id*. Plaintiff argues that "neither State Agency medical consultant found that

6

[Plaintiff] had a severe impairment of substance use disorder, nor that substance use disorder was a material factor contributing to his disability." *Id* at 14-15. And while the consultative examiner noted Plaintiff had a history of self-medicating, being addicted to cocaine, and committing crimes while intoxicated, Plaintiff denies currently abusing or regularly drinking alcohol, and admits only to current marijuana use. *Id*. at 15.

Moreover, Plaintiff argues, while his treating source reported "alcohol use, cannabis use, and cocaine use . . . these were deemed to be mild, and in remission." *Id*. Otherwise, Plaintiff urges that there is no record of any health care provider diagnosing him with a current substance abuse disorder. *Id*.

In other words, Plaintiff argues both that there was no medical evidence of DAA and even if there was, there is no evidence to support the ALJ's finding that Plaintiff's DAA is a contributing factor material to the determination of disability.

The Commissioner points to the regulations found at 20 C.F.R. § 416.935(b), which set forth the process that must be followed when there is medical evidence of a claimant's substance abuse. Dkt. No. 22 at 8. The Commissioner argues the ALJ must first determine if Plaintiff is disabled using the five-step sequential process and considering the effects of DAA. *Id*. at 9. Next, the ALJ must decide if there is "medical evidence of DAA." *Id*. Finally, if there is medical evidence of DAA, the ALJ performs the five-step sequential process a second time, but assumes the claimant stopped using drugs and alcohol. *Id*. This second application of the five-step process determines whether DAA is a contributing material factor to the disability. *Id*. And, as the Commissioner notes, the burden of proving

7

during this second five-step evaluation that DAA was not a material contributing factor to the disability is on the claimant.

The Commissioner argues that "medical evidence of DAA" is specifically defined for purposes of the Social Security Act as evidence from "an acceptable medical source" which "[i]s sufficient and appropriate to establish that the individual has a medically determinable substance use disorder." *Id*. And "substance use disorder" is defined in the Diagnostic and Statistical Manual of Mental Disorders ("DSM") as "maladaptive patterns of substance use that lead to clinically significant impairment or distress." *Id*. at 9-10. This finding, like any finding of a medically determinable impairment, must be supported by "objective medical evidence—that is, signs, symptoms, and laboratory findings—from an acceptable medical source. . . ." *Id*. at 10.

Plaintiff counterargues that "[t]he ALJ never made a determination that [Plaintiff] is addicted to drugs, or that he is an alcoholic." Dkt. No. 23 at 3. Rather, Plaintiff argues, the ALJ's "only determination was that Plaintiff has a "substance use disorder," which Plaintiff argues is not the same thing. *Id*.

Plaintiff agrees that the ALJ must decide if there is "medical evidence of DAA, but argues that was "no evidence of addiction or alcoholism during the period of adjudication." *Id*. at 4. Thus, while Plaintiff acknowledges that the burden during the second five-step evaluation is on him, he argues that the ALJ erred in reaching that second evaluation here because there was no medical evidence of DAA. *Id*.

As the Commissioner points out, "a claimant has DAA if he or she has a medically determinable Substance Use Disorder." Social Security Ruling (SSR) 13-2P, 2013 WL

8

621536, *4. (Feb. 20, 2013). The same rules for determining a physical or mental impairment are used in determining if a claimant has a Substance Use Disorder. *Id.* An ALJ needs objective medical evidence from an acceptable medical source to support the existence of DAA. *Id.* at *10. This does not require overt physical signs or laboratory findings provided there are clinical findings based on an examination by a psychiatrist, psychologist, or other appropriate medical source. *Id.* The medical source may also consider records or other information, but the ALJ still needs the source's own clinical or laboratory findings.

The use of drugs or alcohol by itself does not establish a Substance Use Disorder. *Id.* However, an ALJ may consider information from sources such as family members, friends, counselors, and others along with objective medical findings from treating and non-treating medical sources to determine the existence, severity, and materiality of DAA. *Id.* at 11.

As the Commissioner points out, the ALJ follows a process set out in the regulations to determine if DAA is a contributing factor material to a claimant's disability. 20 C.F.R. § 404.1535(b); *see also* 20 C.F.R. 416.935. First, the ALJ must apply the usual five-step sequential evaluation to determine if the claimant is disabled based on the current physical and mental limitations, including the DAA. *Id.* at (b)(1). Then, if the claimant is determined to be disabled, the ALJ must again apply the sequential evaluation process to determine materiality, i.e., whether the claimant would still be disabled if they stopped using drugs or alcohol. *Id.* As explained above, the claimant bears the burden of proving that drug or

9

alcohol addiction is not a contributing factor material to the disability. *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

The ALJ followed the process set out in 20 C.F.R. § 404.1535(b). First, the ALJ applied the usual five-step sequential process and determined at step 3 that Plaintiff, while engaging in substance use, had an impairment or combination of impairments that meets or medically equals one of the listed impairments, including listing 12.04. Tr. 14-16. In the absence of medical evidence of DAA, this would have ended the analysis and Plaintiff would have been deemed disabled. But here, the ALJ determined that there was medical evidence of DAA.

There is no dispute that Plaintiff had a significant history of polysubstance dependence related to cocaine, cannabis, and alcohol. The dispute here centers on whether the ALJ had objective medical evidence of ongoing patterns of substance abuse that lead to clinically significant impairment or distress, i.e., a "substance use disorder." This question turns on evidence for whether Plaintiff's documented substance abuse disorders were in remission at the time of the ALJ's decision.

As noted above, the hearing before the ALJ took place on September 23, 2019. There is no evidence that Plaintiff was continuing to use cocaine or alcohol at this point. Those conditions appear to have been in some stage of remission. But the record evidence regarding the remission of Plaintiff's cannabis use disorder is conflicting, alternatively reflecting both remission and active use. Those conflicts are for the ALJ to resolve. *Greenspan*, 38 F.3d at 236.

In her decision, the ALJ noted that Plaintiff's treatment records from July and September 2019—the months including and immediately preceding the hearing date—reflect continuing marijuana use by Plaintiff to control physical pain and anxiety. Tr. 19. These are clinical findings from an acceptable medical source, as are Plaintiff's history of cannabis use and diagnoses for cannabis use disorder. Tr. 16, 19, 22, 380, 529, 536, 678, 693-4.

This evidence is corroborated by Plaintiff's testimony at the hearing that he continued using marijuana, including five days before the hearing. Tr. 47. The ALJ also compared Plaintiff's psychological evaluations from September 2018 to September 2019. Tr. 18. While Plaintiff's mental status examination showed improvement, he still "claimed to have paranoid delusions" when using cannabis. Tr. 19.

For the above reasons, the Court finds that substantial evidence supports the ALJ's determination that there was medical evidence of Plaintiff's drug addiction or alcoholism.

After establishing that Plaintiff had a medically determinable substance use disorder, the ALJ then reassessed Plaintiff using the five-step sequential process to determine materiality. Tr. 16-28. Here, Plaintiff bore the burden of proving that drug or alcohol addiction was not a contributing factor material to his disability, *see Brown*, 192 F.3d at 498, and Plaintiff failed to meet that burden. The record reflects diagnoses of polysubstance dependence for cocaine, cannabis, and alcohol with Plaintiff's cocaine dependence in remission. Tr. 678-79. Plaintiff's own testimony supports his continued use of cannabis. Tr. 47. The ALJ cited each of Plaintiff's psychiatric evaluations and explained her reasoning for accepting or rejecting each opinion given. Tr. 21-26. Ultimately, the ALJ

found that Plaintiff's substance use disorder is a contributing factor material to the disability determination because Plaintiff would not be disabled if he stopped the substance use. Tr. 27-28. And substantial evidence of record supports that determination.

### B. Medical Judgment

Plaintiff argues the ALJ substituted her own opinion for that of the medical opinions presented, and therefore the RFC is not supported by substantial evidence. Dkt. No. 19 at 17-19. Specifically, Plaintiff claims the State Agency medical consultants found Plaintiff had moderate impairments in his ability to understand, remember, or apply information; interact with others; and to concentrate persist or maintain pace and a mild impairment in the ability to adapt or manage oneself. *Id.* at 17. Plaintiff argues that the ALJ found Plaintiff would only be moderately limited in the area of ability to adapt or manage in a work setting. *Id.* Plaintiff argues the ALJ improperly interpreted the medical evidence and substituted her own opinion for that of both the treating and non-examining sources. *Id.*

The Commissioner responded by arguing that the ALJ must consider the medical evidence as a whole to determine the RFC. Dkt. No. 22 at 12-15. The Commissioner argues that Plaintiff's argument stems from a previous SSA rule that has since been updated that distinguished between treating sources and non-examining sources. *Id.* The Commissioner claims the ALJ used the entire medical record to track the progress of Plaintiff and determine an appropriate RFC supported by substantial evidence. *Id.*

The purpose of an RFC is to determine the most an individual can do despite their limitations. SSR 96-8P, 1996 WL 374184, at *1 (1996). An ALJ is under a duty to "develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67

12

F.3d at 557. It is impermissible for an ALJ to rely on their own medical opinions to develop factual findings. *Williams v. Astrue*, 355 Fed. App'x 828, 832(5th Cir. 2009). The ALJ needs to both understand what condition or conditions Plaintiff suffers from and how those conditions limit Plaintiff's ability to work. *See Ripley*, at 557-58. However, the ALJ is no longer required to give specific evidentiary weight or even controlling weight to any medical opinions. 20 C.F.R. § 416.920c

As the Commissioner points out, this case was filed October 13, 2017. Tr. 11. And so, the rules under 20 C.F.R. § 416.920c apply and there is no distinction between treating sources and examining sources. As such, the ALJ uses a series of factors to determine the usefulness of a medical opinion. *Id.* at (c)(1-5). The ALJ is not required to delineate every factor but instead use them as a tool to determine the medical opinions helpfulness and reliability in determining an RFC. *Id.* at (b)(2).

The ALJ explained her reasoning for rejecting or accepting each medical opinion in her decision using the factors listed in 20 C.F.R. § 416.920c. Tr. 22-26. The ALJ found that Nurse Practitioner Charlotte Lindsey's opinion that Plaintiff could not do semiskilled or skilled work and had a poor or no ability to interact appropriately with others "clearly has support."[4] Tr. 23. However, the ALJ explained that subsequent visits with other doctors revealed Plaintiff's continued improvement. *Id.* The ALJ determined Dr. Leslie Westmoreland's January and August 2018 opinions that Plaintiff could not work were not persuasive because there was no explanation for which conditions prevented Plaintiff from

---

[4] The ALJ identifies Lindsey as a medical doctor but further review of the record shows Lindsey is a nurse practitioner. Tr. 581.

working and Plaintiff had not worked for a period of over a year at the time of the January evaluation and even longer by the time of the August evaluation. Tr. 24. The ALJ parsed out her reasoning as to each medical source that Plaintiff interacted with and the evaluations at the reconsideration level. Tr. 22-26. The ALJ then explained her reasoning for each limitation given in the RFC based on the medical evidence. Tr. 26. The purpose of this Court is to not reweigh the evidence or consider the issues anew. *Brown*, 192 F.3d 496. Instead, the Court gives deference to the ALJ as it is the Social Security Administration's job to resolve conflicts in the evidence. *Id.*

While Plaintiff may not agree with the ALJ's opinion, it is supported by substantial evidence. Additionally, Plaintiff has failed to explain how he is prejudiced by the ALJ's examination of the evidence.

C. <u>Existence of Other Work</u>

Plaintiff argues the Commissioner failed to meet her burden to establish jobs exist in significant numbers that Plaintiff can perform. Dkt. No. 19 at 20. Plaintiff claims the jobs provided in the ALJ's opinion are inconsistent with the given RFC. *Id.* Plaintiff points to the *Dictionary of Occupational Titles* (*DOT*) descriptions of the three jobs as evidence the Commissioner failed to meet her burden and thus the ALJ's decision is not supported by substantial evidence. *Id.* at 21-22.

The Commissioner argues the ALJ relied on a series of hypotheticals presented to the VE which incorporated Plaintiff's age, education, and vocational limits to determine that jobs exist in significant numbers in the national economy. Dkt. No. 22 at 15. The Commissioner argues the ALJ properly relied on the VE's responses to meet her burden

given the VE's knowledge, expertise, and familiarity with the DOT. *Id.* The Commissioner claims Plaintiff must raise the objection at the hearing to preserve the argument and must prove he cannot perform the alternate work. *Id.* at 15-16.

The ALJ is permitted to rely on the VE's testimony to determine whether jobs exist in significant numbers in the national economy. *Carey*, 230 F.3d. at 146. If there are implied or indirect conflicts between the VE's testimony and the DOT, the ALJ may rely upon the VE's testimony if there is adequate evidence on the record for the VE's opinions. *Id.* The DOT is not comprehensive and does not list every specific skill or qualification for every particular job. *Id.* at 145. Further, if a plaintiff wishes to raise the issue of conflict between the DOT and the VE's testimony, the plaintiff is required to do so at the administrative hearing. *Id.* at 146. "We will not reverse when the vocational expert's testimony remains clear and unchallenged." *Id.* at 147.

As part of the ALJ's duty to fully develop the record, the ALJ has an affirmative duty to ask about any possible conflict between the VE evidence and the DOT. SSR 00-4p, 2000 WL 1898704, *2-4 (Dec. 4, 2000). Specifically, the ALJ is required to determine whether there is consistency between the VE's testimony and the DOT. *Id.*

Plaintiff did not question the VE about the specific skills required of a bench assembler, hand packagers, or a routing clerk. Tr. 59-62. The only additional questions Plaintiff asked of the VE was whether jobs would exist if Plaintiff required instructions repeated every two hours. Tr. 61. Plaintiff did not attempt to further develop the skills or requirements of the given jobs. *Id.* In his brief, Plaintiff argues the jobs are inconsistent

with the given RFC, not that Plaintiff is incapable of performing the work. Dkt. No. 19 at 20-22.

The ALJ relied on the testimony from the VE and gave four hypotheticals to determine if jobs exist in significant numbers in the national economy that would comply with the given RFC. Tr. 59-62. The ALJ's questions to the VE incorporated Plaintiff's limitations and the possibility of being off-task. *Id.* Specifically, the ALJ asked the VE if her testimony was consistent with the *DOT*. Tr. 60. The VE answered affirmatively, explaining how she went further to account for more factors than the *DOT* contemplates when giving her answers. Tr. 60-61. The ALJ met her burden of substantial evidence.

For these reasons, the undersigned does not find the ALJ committed reversible error because substantial evidence supports the ALJ's RFC.

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the hearing decision be AFFIRMED. Because all parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to REASSIGN this case to United States District Judge Wesley James Hendrix in accordance with normal procedures.

## V.  RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be

specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 13th day of December, 2021.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE