UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| REYNALDO FLORES R.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | No. 6:20-CV-085-H-BU |

**ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

United States Magistrate Judge John R. Parker made Findings, Conclusions, and a Recommendation (FCR) regarding the final adverse decision of the Commissioner of Social Security on December 13, 2021. *See* Dkt. No. 24. Judge Parker recommended that the Court affirm the Commissioner's decision. *Id.* at 16. Plaintiff filed an objection to the FCR. Dkt. No. 25. For reasons stated below, the Court accepts and adopts the FCR (Dkt. No. 24). The Court affirms the final adverse decision of the Commissioner, and this case is dismissed.

1. **Legal Standards**

    A.  **Standard of Review for Each Basis of Challenge**

    In his appeal, plaintiff challenged the ALJ's decision arguing: (1) that the ALJ, without medical evidence, determined he had a substance use disorder; (2) that the ALJ did not have substantial evidence to conclude that plaintiff would not be disabled if he stopped

using substances;[1] (3) that the ALJ substituted her opinions for those of the medical sources in determining his residual functioning capacity (RFC); and (4) that there are not jobs that he can perform existing in the economy in significant numbers because the jobs identified by the vocational expert—whom the ALJ relied upon—are inconsistent with the RFC. *See* Dkt. No. 19 at 2–3; 23. Plaintiff objects to the FCR based on arguments (1), (2), and (3), but raises no objection as to (4). *See* Dkt. No. 25.

The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); see 28 U.S.C. § 636(b)(1). All uncontested portions of the FCR are reviewed only for plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1); *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 502 (5th Cir. 2020). Therefore, the Court reviews the first three arguments de novo and the fourth for plain error.

**B.    ALJ Disability Determinations and De Novo Review**

In evaluating a disability claim, an ALJ performs a five-step analysis to determine whether: "(1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see* 20 C.F.R. § 404.1520.

---

[1] The Court acknowledges that plaintiff asserted three—not four—grounds for his appeal of the Commissioner's decision. *See* Dkt. No. 19 at 2–3. However, the Court took the liberty of dividing the first ground—that the ALJ determined without medical evidence that plaintiff had a substance use disorder and that the ALJ improperly determined that such disorder was a material contributing factor to his disability—into arguments (1) and (2) for clarity.

And in determining whether a substance use disorder is a contributing factor material to the determination of disability, the ALJ must first perform the five-step analysis to determine if the plaintiff is disabled based on current physical and mental limitations. *See* 20 C.F.R. § 416.935(b)(1); 20 C.F.R. § 404.1535 (same provision); *Kellum v. Comm'r of Soc. Sec.*, No. 1:19-CV-188-DAS, 2021 WL 1083856, at *3 (N.D. Miss. Mar. 19, 2021) (quoting *Bustamante v. Massanari*, 262 F.3d 949, 954–55 (9th Cir. 2001)). If, in the first-pass analysis, the ALJ determines that the plaintiff is disabled and that there is "medical evidence" of "drug addiction or alcoholism," the ALJ must then proceed with a second-pass analysis to determine if the claimant would be found disabled if he or she stopped drugs or alcohol. *See Kellum*, 2021 WL 1083856, at *3. "The burden of proving that substance abuse is not a material contributing factor is on the claimant." *Id.*

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In reviewing de novo an eligibility determination, "[a] court will reverse the ALJ's decision as not supported by substantial evidence if the claimant shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

A court's review of an ALJ's decision is deferential. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [ALJ], even if the evidence

preponderates against the [ALJ's] decision." *Id.* (quoting *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988)). "Conflicts in the evidence are for the [ALJ] and not the courts to resolve." *Id.* (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

2.     **Analysis**

In the first-pass analysis, the ALJ determined that plaintiff was disabled based on then-existing physical and mental limitations. *See* Dkt. No. 17-1 at 18–20. And the ALJ also determined that there was medical evidence to show that the plaintiff had a substance use disorder. *See id.* But in the second-pass, the ALJ found that: (1) "if the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work," (2) "there would be jobs that exist in significant numbers in the national economy that the claimant could perform," and (3) "[b]ecause the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act." *Id.* at 24, 31–32. The Court reviews these conclusions in light of the plaintiff's objections.

    **A.**    **The ALJ relied on medical evidence of drug addiction or alcoholism to determine that plaintiff had a substance use disorder.**

First, plaintiff objects that the "ALJ has not established that he has a medically determinable substance use disorder." Dkt. No. 25 at 3. It is undisputed that plaintiff had a history of substance abuse—including cocaine and alcohol—which resulted in several criminal offenses leading to incarceration between 2005 and 2015. Dkt. No. 17-1 at 18. And in forming the conclusion that plaintiff had a substance use disorder, the ALJ relied on medical records, which diagnose that as of July and September 2019, the plaintiff suffered from "Cannabis Use Disorder," "Alcohol Use Disorder, in early recovery -no use >6 months," and "Cocaine Use Disorder, in recovery -no use for several years." *Id.* at 698,

683, 20, 23. At the hearing, on September 23, 2019, plaintiff stated he used cocaine many years ago but no longer uses it and that he does not drink alcohol anymore. *Id.* at 50–51. However, plaintiff admitted that he uses marijuana "maybe two, three times a month" and used it about five days before the hearing. *Id.* at 51. So the testimony and the medical records conflict somewhat in that the medical records reflect a continuing marijuana use disorder. But the issue of fact was for the ALJ to resolve. *See Brown*, 192 F.2d at 496; *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). And in any case, the ALJ relied on medical evidence in forming her conclusion that plaintiff had a substance use disorder.

> **B. The ALJ's determination that plaintiff would not be disabled if he stopped using substances is supported by substantial evidence.**

Second, the plaintiff objects that even accepting that a substance use disorder existed, the ALJ improperly determined without substantial evidence that such disorder was a material factor contributing to a determination of disability. Dkt. No. 25 at 3. As mentioned above, "[t]he burden of proving that substance abuse is not a material contributing factor is on the claimant." *Kellum*, 2021 WL 1083856, at *3. And plaintiff failed to bear that burden. Plaintiff's testimony at the hearing confirmed that he continued to use marijuana. Dkt. No. 17-1 at 51. And in performing the second-pass analysis to determine whether the plaintiff would be found disabled if he stopped using substances, the ALJ relied on medical reports to determine that claimant's mental impairments would abate if he stopped using substances. *Id.* at 21–23. Specifically, the ALJ noted that plaintiff's adherence to taking medications and remission from substance use showed marked improvement in his mental status examinations from 2018 through 2019. *Id.* at 22–23.

And this narrative is more or less supported by reports from the mental status examinations. *See id.* at 539 (noting medication adherence but no patient-reported efficacy

5

thus far), 586 (noting denial of using illicit substances recently, adherence to medication regimen, and intact attention, though his affect is still guarded), 682 (noting that patient missed some medication doses and regularly uses marijuana but that he is cooperative and responsive), 697 (noting usual state of apprehension and hand tremors but appropriate levels of attention and concentration). Based on this and other medical evidence, the ALJ determined that plaintiff's mental impairments would not cause two marked limitations or one extreme limitation if he stopped using substances. *Id* at 23. And therefore, the plaintiff was found to have only a moderate impairment of his ability to adapt and manage himself. *Id.*

As mentioned above, the Court's review of the ALJ's decision is deferential and the Court may not "reweigh the evidence in the record" or "substitute [its] judgment for that of the [ALJ], even if the evidence preponderates against the [ALJ's] decision." *Brown*, 192 F.3d at 496. The medical reports tend to indicate a trend of improvements coinciding with the plaintiff's remission from substance abuse. Therefore, the Court finds that the ALJ's conclusion that plaintiff would not be disabled if he stopped using substances is supported by substantial evidence.

  **C. The ALJ relied on medical opinions, not her own, to determine that plaintiff had the residual functional capacity to perform light work.**

Third, the plaintiff objects that "the ALJ substituted her own medical opinion to determine Plaintiff's RFC." Dkt. No. 25 at 10. This bare assertion is not supported by the record. In forming her conclusion about the plaintiff's RFC, the ALJ relied on medical records and doctors' opinions for plaintiff's physical and mental-health issues. Dkt. No. 17-1 at 24–30. And the ALJ specifically noted her reasoning for relying or not relying on each of the doctors' opinions. *Id.* at 27–30. The ALJ relied on Dr. Post's opinion regarding

6

plaintiff's ankle problems in shaping the limitations on plaintiff's ability to stand or walk and to "push, pull, or use foot controls with his right lower extremity." *Id.* at 26, 30.  In addition, based on a consultative physical determination of plaintiff's obesity, the ALJ reflected this condition in the RFC "by limiting the claimant to light exertion, and by recognizing that he can never climb ladders, ropes, or scaffolds." *Id.* at 26.

As to plaintiff's mental-health issues, the ALJ noted improvements based on medication adherence and substance abuse remission.  *Id.*  The ALJ relied in part on Dr. Lindsey's December 2018 opinion, which indicated that plaintiff "had a fair ability to understand, remember, and carry out detailed instructions, and to set realistic goals or make plans independently of others, but that he had a poor ability or no ability to deal with stress of semiskilled and skilled work." *Id.* at 27.  But the ALJ also noted that another opinion by Dr. Lindsey in September 2018 was inconsistent with other psychological examinations conducted by Dr. Westmoreland and Nurse Practitioner Crowder one and three months later.  *Id.*  Likewise, the ALJ weighed each of the other psychological opinions by Doctors Westmoreland, Campa, and Geary, in light of reports from more recent mental status examinations in 2018 and 2019.  *Id.* at 28–29.

Again, the Court will not reweigh the evidence in the record.  *See Brown*, 192 F.3d at 496.  The ALJ considered the medical records and weighted the opinions of various physicians in forming her conclusions.  Hence, the Court will not "substitute [its] judgment for that of the [ALJ]." *Id.*  The Court finds that the ALJ properly relied on medical opinions in her determination of plaintiff's RFC.

7

    **D.**    **The Court finds no plain error in the FCR's affirmation of the ALJ's determination that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform.**

Finally, the Court reviews the record and the FCR for plain error with regards to the ALJ's determination that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform. The ALJ properly relied on the vocational expert's testimony as to "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." Dkt. No. 17-1 at 31. "The ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). And as to the specific argument that the vocational expert named several jobs for which plaintiff may not be qualified based on his RFC (Dkt. No. 19 at 20–22), the argument was not raised when plaintiff's counsel was given the opportunity to cross-examine the vocational expert, so the Court will not reexamine the record on this basis. *See id.* at 146–47. The Court finds no plain error in the FCR with regards to the existence-of-jobs issue.

**3.**    **Conclusion**

Having reviewed the FCR in light of plaintiff's objections, the Court accepts and adopts the FCR (Dkt. No. 24). The Court affirms the final adverse decision of the Commissioner, and this case is dismissed.

So ordered on February 3, 2022.

                                                                                       */s/ James W. Hendrix*
                                                                                      JAMES WESLEY HENDRIX
                                                                                      UNITED STATES DISTRICT JUDGE